[Civ. No. 14201.   Second Dist., Div. Three.   Mar. 19, 1945.]

FOLANDERS WALTON, Appellant, v. MRS. HESTER HILL EVANS, Respondent.

Thomas L. Griffith, Jr., and Lloyd Cornelius Griffith for Appellant.

Marshall Stimson and Noel Edwards for Respondent.

DESMOND, P. J.—The defendant in this case acquired by foreclosure of a trust deed an income-producing parcel of real estate which the plaintiff had furnished as security for payment of his promissory note executed on June 16, 1936, in favor of the defendant in the sum of $500.   The note was given when plaintiff and defendant separated after living on defendant's property for some five years in contemplation of marriage.   The commissioner's deed conveying this property

to the defendant was dated September 19, 1941, and two months later the plaintiff filed the action, upon which the present appeal is predicated, seeking to quiet title in himself to the real estate involved, alleging that ''there was no lawful consideration for the said Promissory Note secured by said deed of trust, and that the consideration, if any at all, failed and became valueless prior to the proceedings herein.'' The trial court found that proceedings in connection with the foreclosure were regular as detailed in the defendant's answer and, accordingly, entered judgment on the question of title adversely to the plaintiff and in favor of Hester Hill Evans; also ordering judgment in favor of the defendant in the sum of $1,038, based upon her counterclaim for use and occupation by the appellant and collection of rentals made by him. The appeal is claimed by the plaintiff from the entire judgment and also from the order of the trial court denying his motion for new trial.

Appellant contends that the court's finding that he refused to pay the promissory note or any part thereof is not supported by the evidence ''where the evidence shows that the consideration for the promissory note was the Defendant's interest in the home and the sole interest of Defendant in the home was the furniture she contributed funds to purchase and which she later took from the possession of the Plaintiff at the time when he was making installment payments on the note in the sum of $20.00 per month.'' The trial court, however, heard defendant's testimony that the only furniture which she removed from the premises belonged to her, was bought by her and that she had no agreement with appellant to leave it in the house. This was sufficient evidence, coupled with other testimony given by defendant as to the circumstances of the giving of the note, to warrant the finding of which appellant complains, even though he testified to the contrary. The judge, of course, was under no obligation to accept his version. The record indicates that during the five-year period while the plaintiff and defendant lived together certain repairs and alterations were made on the buildings on the lot in question and that the defendant contributed largely to the cost thereof. Defendant testified that she applied practically all her earnings toward the support of their home and alterations made thereon. She also testified that she advanced the sum of $120 to meet payments as they fell

due upon a Ford automobile which the appellant was then buying and that he agreed to repay her that sum at the rate of $20 per month.

The court found that plaintiff was indebted to defendant in the sum of $500 and that he had executed the note in payment thereof. The testimony of defendant was that she claimed to have "put more than $500.00 in the place," that there was a disagreement as to the amount and that it was settled by the execution of the note. The finding has ample support in the evidence.

At the trial the plaintiff produced five checks in the sum of $20 each, dated, respectively, July 9, 1936, September 8, 1936, November 2, 1936, December 9, 1936, and January 26, 1937, claiming that Mrs. Evans knew at the beginning that the "money was on that note." However, being asked, "With reference to the checks for $20.00 each, Did you have any conversation with Mrs. Evans whatsoever with reference to applying that on any automobile?", appellant answered, "No," although he at the same time reiterated, "The money was paid on the note each month." Defendant testified that the five checks constituted repayment to her of sums of money she had paid toward the purchase of the Ford automobile and that they were not in payment of the $500 note.

It does not appear that any additional checks were delivered by the appellant to Mrs. Evans and, finally, approximately three years after the note was executed, she filed her action on June 27, 1939, seeking to foreclose the deed of trust which appellant had delivered to her. Mr. Edwards, the attorney whom she selected to prosecute this suit, had acted as attorney for the appellant three years previously at a time when appellant was taking over the property in question as the surviving joint tenant of his brother. At that time a foreclosure was under way on the property and the appellant paid approximately $400 to the Pacific States Savings & Loan Association for an extension which his attorney obtained. When the appellant was served with the summons and complaint in the foreclosure action of 1939, he called at the office of Mr. Edwards, and concerning that call testified as follows: "Q. By MR. EDWARDS: After you were served with the summons and complaint, you came up to see me at the office? A. I did. Q. At that time I told you I was representing Hester Hill Evans and that I could not

represent you. Is that not a fact? A. I did not hear you say
that. You said you would take care of everything." At an-
other point he testified concerning this call: "A. I said, 'Will
you take care of this for me?' He said, 'I will.' He was em-
ployed as my attorney. . . . He said, 'We would work out a
way and fix this thing up.' I figured he was my attorney
all the time."

Mr. Edwards testified that "after I filed the complaint and
had Mr. Walton served, he came to my office, showed me these
checks that have been offered in evidence. He told me these
checks were in payment of the note, and I told him that, if
they were in payment of the note, he should have credit for it,
and I would take it up with Hester Hill. I did take it up with
her and afterwards reported to him that she claimed that
these checks were not in payment on the note, but were in
payment on an automobile transaction. I had several con-
versations with him after that time, and finally it wound up
in reducing the amount of the loan, of the amount of the
demand. Q. By the COURT: Demand at the bank? A. At the
bank, yes. I sent that down to the bank with Mrs. Evans'
consent, and the demand was not paid, and the papers were
returned to me, and she instructed me to go ahead with the
foreclosure, as I had continuously notified Mr. Folanders
Walton and suggested to him as often as I possibly could, to
take care of the matter."

The testimony showed without contradiction that shortly
after the visit to Mr. Edwards' office the appellant undertook
to negotiate a loan at his bank upon the real estate involved
in this action, which would enable him to clear his obligations
to the Pacific States Savings & Loan Association and to the
defendant, as well as to make certain improvements upon the
property. The assistant cashier of the bank testified that the
loan, in a sufficient amount to accomplish that, would have
been made but for some reason the appellant declined to com-
plete the transaction, with the result that all papers in con-
nection with the deal were returned to him. The transaction
with the bank was summarized by the trial court in the fol-
lowing language: "Mr. Miller [the assistant cashier] says
'the application was for $1060.00, and we were ready to make
the loan. The reason it wasn't closed was because he thought
Mrs. Evans was asking too much money and it should be re-
duced about $100.00.'" A definite effort was made to clear

the appellant's misapprehension in regard to the amount of Mrs. Hill's claim, as shown by a letter addressed to him on January 5, 1940, reading as follows:

"January 5, 1940

"Folanders Walton
1319 East Walnut
Los Angeles, California
Dear Sir:

"On December 11th, at your request, I mailed to the bank the demand of Hester Hill Evans for $576.35. The amount of your indebtedness to her with costs and expenses was $676.35. I therefore allowed you a credit for the $100.00 which you had paid to Hester Hill Evans.

"I called the bank this morning and they advised that you were stalling because you believed you had not been given credit for the $100.00 you paid to Hester Hill Evans. I am calling your attention to the fact that you have been given credit for the $100.00 you paid. The other items making up the amount are interest, attorney's fees and expenses of foreclosure, and cannot be further reduced. The bank advises me that money will be loaned to you to satisfy this obligation. It is to your interest to work this problem out but if you do not care to do so, kindly advise me and I will immediately proceed with the foreclosure.

"Very truly yours,<br>(Signed) Noel Edwards

NE/M  Noel Edwards''

Notwithstanding this notice, which should have satisfied the appellant that the defendant was willing to give him credit for $100 payment on the note instead of on the automobile transaction as originally claimed, he still refused to complete the bank loan, resulting in the return of his papers to him in the following March. The bank advised him at that time, "We are returning the following papers which you left with us to be used in connection with your recent application for real estate loan which you have since cancelled out." Since appellant owed the defendant the sum of $500, according to his note, plus accruals thereon, which obligation he refused to pay although the bank was ready and willing to advance the necessary funds, it is apparent that his claim of lack of consideration has no foundation in fact.

The additional claim that the judgment of foreclosure was rendered against appellant inadvertently or that he thought Mr. Edwards represented him is effectively offset by the testimony in this case and, particularly, by the letters which Mr. Edwards wrote him and which were introduced in evidence. We quote two of them as follows:

"AIR MAIL           September 11, 1939

Mr. Folanders Walton
Akron, Alabama
Dear Sir:

"I have your letter of September 8th and immediately called Mr. Miller at the Bank of America. He advised me that you had not completed your application for a loan and that, in effect, nothing had been done.

"Mrs. Evans is very anxious that this matter be taken care of and she also tells me that the checks which you showed me were not to apply on payment of the mortgage, but were in payment of an automobile transaction which you had with her.

"Please give this matter your immediate attention, or I shall be compelled to finish the foreclosure.

         "Very truly yours,
NE:PS          NOEL EDWARDS"

          "November 28, 1939

Folanders Walton
Akron, Alabama
      EVANS vs WALTON
"Dear Sir:

"You have utterly failed me in every promise you have made and now I understand you have used your money to buy an automobile. I have entered your default and intend to take judgment and proceed with the sale unless you immediately take care of this obligation.

         "Very truly yours,
NE/M        (Signed) Noel Edwards
         Noel Edwards"

Notwithstanding the suggestion of summary action in the latter communication, Mr. Edwards wrote him again in January, as we have seen, and the sale under foreclosure did not take place until September 17, 1940, more than a year after entry of judgment in defendant's favor.

The purported appeal from the order denying motion for new trial is dismissed, since such an order entered in a civil case has not been appealable since 1915. (*Gray* v. *Cotton* (1917), 174 Cal. 256 [162 P. 1019]. See, also, 2 McK.Dig., Appeal and Error, § 74; Cal. Pac. Digest, § 780(1).)

The judgment is affirmed.